UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **FREDERICK H. BROWN** | **CIVIL ACTION** |
| **VERSUS** | **NO. 10-4564** |
| **BOARD OF COMMISSIONERS,** <br> **PORT OF NEW ORLEANS** | **SECTION "C" (3)** |

### ORDER AND REASONS[1]

Before the Court is defendant Board of Commissioners, Port of New Orleans' ("Port") Motion for Summary Judgment. Rec. Doc. 85. Plaintiff Frederick H. Brown ("Brown") opposes this Motion. Rec. Doc. 91. Having examined the memoranda of counsel, the record, and the applicable law, the defendant's Motion is GRANTED for the following reasons.

### I. BACKGROUND

Brown, an African-American male, was hired by the Port of New Orleans in 1999 and terminated effective September 20, 2011. Rec. Doc. 85-1; Rec. Doc. 91-1. Brown argues that he was terminated in retaliation for engaging in activity protected under Title VII of the Civil Rights Act. Rec. Doc. 47; Rec. Doc. 76; Rec. Doc. 91.

As part of its Motion for Summary Judgment, the Port submitted a Statement of Uncontested Material Facts supported by evidence from the record. Rec. Doc. 85-1. Brown responded by denying almost all of the Port's uncontested facts as irrelevant, out of context, incomplete,

---

[1] William Fullwood, a third-year student at Fordham University Law School, and Ashley Stockton, a second-year student at Tulane University Law School, assisted in the preparation of this Order and Reasons.

inaccurate, or implying conclusions with which Brown disagrees.  Rec. Doc. 91-1.  However, as the Port states, Brown's response is improper because it is unsupported by evidence.  Rec. Doc. 95-2 at 1.  Brown includes no record citations and in many instances denies allegations from his own pleadings and sworn statements from his own deposition.  Rec. Doc. 95-2 at 2.  To show that a fact is genuinely disputed, Brown must support his assertion by "[c]iting to particular parts of material in the record . . . or . . . showing that that materials cited [by the Port] do not establish the absence . . . of a genuine dispute."  FED. R. CIV. P. 56(c)(1).  Based on Brown's failure to convincingly dispute any of the Port's statements of fact or provide contrary authority, the Court accepts the statements in the Port's Statement of Uncontested Material Facts as undisputed for purposes of the Motion for Summary Judgment.  *See* FED. R. CIV. P. 56(e).

The record indicates that in 2005 Brown filed an internal complaint on race discrimination with the Port entitled "Report on Race Relations."  Rec. Doc. 47 at 2; Rec. Doc. 85-1 at 1; Rec. Doc. 85-3 at 7, 55-56.  Brown alleges his supervisor, Cynthia Swain, referred to Brown as "chocolate cake" in May 2006 and told him that light-skinned employees were apt to move up at the Port.  Rec. Doc. 47 at 3.  In 2006, 2008, 2009, and 2010, Brown filed EEOC charges against the Port claiming racial discrimination and retaliatory behavior.  Rec. Doc. 85-1 at 2; Rec. Doc. 85-3 at 9.  In 2009, Brown filed a complaint against the Port with the Louisiana Board of Ethics claiming retaliation.  Rec. Doc. 85-1 at 1; Rec. Doc. 85-3 at 52.  Brown also filed a number of internal complaints with the Port during his employment there.  Rec. Doc. 85-1 at 2; *see* Rec. Doc. 85-3 at 59-200.

The record shows that Brown's pay never decreased during his employment with the Port. Rec. Doc. 85-1 at 2; Rec. Doc. 85-3 at 34.  Brown received salary increases both before and after filing complaints against the Port on the recommendations of Swain and Joseph Cocchiara.  Rec.

Doc. 85-1 at 2; Rec. Doc. 85-3 at 8, 34. The record indicates that Brown was offered a five percent optional pay increase and that he asked for the approval of that increase to be rescinded. Rec. Doc. 85-1 at 2; Rec. Doc. 85-3 at 46, 218-19.

According to the record, Brown's office at the Port had two external doors, one of which faced the Port's lunch room. Rec. Doc. 85-1 at 2; Rec. Doc. 85-3 at 5. On February 19, 2008, Brown alleged that Cocchiara and employee Robert Jumonville and laughed at and taunted him while passing this door. Rec. Doc. 47 at 4; Rec. Doc. 85-1 at 2. Brown made additional allegations against Cocchiara on June 5, 2008. Rec. Doc. 47 at 5; Rec. Doc.85-1 at 3. An independent investigator was hired to investigate Brown's allegations and found them to be baseless. Rec. Doc 85-1 at 3; Rec. Doc. 85-3 at 230-33. On May 6, 2010, Brown submitted a complaint with the Port's human resources department alleging that Jumonville and employee Johnny Cefalu had laughed at and taunted him in April 2010 while accompanied by two visitors. Rec. Doc. 47 at 6; Rec. Doc. 85-1 at 3; Rec. Doc. 85-3 at 152-53. An investigation showed that the incidents were uncorroborated. Rec. Doc. 85-1 at 3; Rec. Doc. 85-3 at 164-69. Brown additionally alleged in his 2010 EEOC complaint that thirteen such incidents involving eleven employees had occurred between August 2009 and May 2010. Rec. Doc. 47 at 6; Rec. Doc. 85-1 at 3; Rec. Doc. 85-3 at 157-58. In response to Brown's May 2010 allegations, the Port conducted another investigation and found that none of the accused or alleged witnesses corroborated Brown's allegations. Rec. Doc. 85-1 at 3; Rec. Doc. 85-3 at 62.

On June 28, 2010, the Port directed Brown to keep the office door closest to the lunch room closed. Rec. Doc. 47 at 6; Rec. Doc. 85-1 at 4. Brown maintained that he was not required to follow this directive. Rec. Doc. 85-1 at 4; Rec. Doc. 85-3 at 162. On June 29, 2010, he was placed on

administrative suspension without pay pending an investigation into the door closure. Rec. Doc. 85-1 at 4; Rec. Doc. 85-3 at 171. Brown had previously been suspended for making derogatory comments about other employees and violating a directive to stop sending the Port's Chief Operation Officer and Chief Executive Officer unsolicited editorial comments regarding other employees' performance. Rec. Doc. 85-1 at 4-5; Rec. Doc. 85-3 at 146-51. On June 30, 2010, Brown agreed to keep the door closed. Rec. Doc. 85-1 at 4; Rec. Doc. 85-3 at 62. In July 2010, Brown filed a Petition for a Temporary Restraining Order and Preliminary Injunctive Relief in the Civil District Court for the Parish of Orleans, asking that court to restrain the Port from ordering him to close his door. Rec. Doc. 85-1 at 4; Rec. Doc. 85-3 at 50-51. The petition was denied. Rec. Doc. 85-1 at 4; Rec. Doc. 85-4 at 48-51. Brown was advised on July 27, 2010 that he would be suspended for three days because of his defiance of the order regarding the door closure and was told that if he remained defiant, termination would be recommended. Rec. Doc. 85-1 at 4; Rec. Doc. 85-3 at 174-77.

In June 2011 Brown, along with the rest of the Port's employees, was notified of new procedures regarding the Port's payroll policy. Rec. Doc. 85-1 at 5; Rec. Doc. 85-3 at 179-80. Brown expressed his unwillingness to comply with the new procedures. Rec. Doc. 85-1 at 5; Rec. Doc. 85-3 at 198-200.

On August 2, 2011, upon observing that Brown's office door was open, Swain closed it and directed him to keep it closed. Rec. Doc. 47 at 7; Rec. Doc. 85-1 at 5. On August 3, 2011, Chief Operating Officer Pat Gallwey observed that Brown's office door was open and reported it to Swain. Rec. Doc. 47 at 7; Rec. Doc. 85-1 at 5. Swain sent Brown an email advising him that "the directive to keep that door closed remain[ed] in effect," and that his "failure to follow the directive [would]

result [in] disciplinary action." Rec. Doc. 47 at 7; Rec. Doc. 85-1 at 5; Rec. Doc. 85-3 at 66. On August 4, 2011, Jeffery Lynch, General Counsel for the Port, observed that Brown's office door was open. Rec. Doc. 47 at 7; Rec. Doc. 85-1 at 5. That same day Brown was placed on suspension pending an investigation into these incidents. Rec. Doc. 85-1 at 6. In a letter dated August 8, 2011, Brown stated that his door had been open every day for the last four months. Rec. Doc. 85-1 at 6; Rec. Doc. 85-3 at 67. Brown was terminated effective September 20, 2011. Rec. Doc. 85-1 at 6; Rec. Doc. 91-1 at 1; Rec. Doc. 85-3 at 201. The reasons given for the termination were his insubordination in failing to keep his office door closed as directed and declining to follow the Port's payroll policy, and his repeated lack of professionalism and respect in dealing with coworkers and supervisors. Rec. Doc. 85-1 at 6; Rec. Doc. 85-3 at 205-06.

## II. LAW AND ANALYSIS

### A. Standard of Review

The court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). An issue is material if its resolution could affect the outcome of the action, and a genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2502, 2510, 91 L.Ed.2d 202 (1986); *Wyatt v. Hunt Plywood Co., Inc.*, 297 F.3d 405, 408-09 (5th Cir. 2002) When considering a motion for summary judgment, "the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Deville v. Marcantel*, 567 F.3d 156, 163-64 (5th Cir. 2009). Summary judgment cannot be defeated by "conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence.'" *Delta & Pine*

5

*Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).

The moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). If the moving party meets its initial burden, the burden shifts to the non-moving party "to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995) (citing *Celotex*, 477 U.S. at 322-24).

**B. Title VII Retaliation Claim**

Brown contends that he was terminated in retaliation for engaging in protected activity under Title VII of the Civil Rights Act. Rec. Doc. 47; Rec. Doc. 76; Rec. Doc. 91. Under Title VII it is "an unlawful employment practice for an employer to discriminate against [an] employee because . . . because he has made a charge" against the employer. 42 U.S.C. § 2000e-3. The employee's submission of or support for a complaint that alleges employee discrimination is a type of protected conduct for which an employer may not discriminate against the employee under Title VII. *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2525 (2013).

As both parties recognize, Brown's claim must be analyzed using the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824 36 L.Ed.2d 668 (1973). *Septimus v. Univ. of Houston*, 399 F.3d 601, 609 (5th Cir. 2005); Rec. Doc. 85-2 at 13; Rec. Doc. 91 at 3. Under this framework, Brown must first establish a *prima facie* case of retaliation. *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007). To establish a *prima*

*facie* case of retaliation, Brown must show that (1) he engaged in a protected activity; (2) an adverse employment action occurred; and (3) a causal connection exists between the protected activity and the adverse employment action. *McCoy*, 492 F.3d at 556-57. The burden then shifts to the Port, which must state a legitimate, non-retaliatory reason for its action. *Id.* at 557. If the Port meets this burden, Brown bears the ultimate responsibility of proving that the Port's given reason is only a pretext for the real retaliatory purpose. *Id.*

It is undisputed that Brown engaged in protected activity and that his termination qualifies as an adverse employment action. Rec. Doc. 47 at 3; Rec. Doc. 85-2 at 16. However, the Port contends that Brown cannot prove that a causal connection exists between the protected activity and the adverse employment action. Rec. Doc. 85-2 at 16.

The Supreme Court recently clarified the standard of causation for Title VII retaliation claims in *Univ. of Tex. S.W. Med. Ctr. v. Nassar*, 133 S. Ct. 2517 (2013). The Court held that a plaintiff making a § 2000e-3 retaliation claim "must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer." *Nassar*, 133 S. Ct. at 2534. The plaintiff's participation in the protected activity must be the reason that the employer decided to act – in other words, the "desire to retaliate [must be] the *but-for cause* of the employer's adverse decision." *See id.* at 2527-28 (emphasis added). To survive summary judgment, Brown must present evidence from which a reasonable jury could find that the Port decided to terminate him in retaliation for his repeated complaints of discrimination. *See id*; *Donald v. Portillo's Hot Dog's, Inc.*, No. 9-7436, 2013 WL 3834402, at *13 (N.D. Ill. July 24, 2013) (citing *Nassar*).

Brown alleges that the Port engaged in a prolonged period of retaliatory behavior against him for making charges of discrimination and that his termination was a direct result of his history of

7

filing complaints. Rec. Doc. 91. He contends that this litigation specifically was a recent protected activity he engaged in that motivated the Port to terminate him. Rec. Doc. 91 at 29-30.

The Port contends that Brown's employment was terminated because he engaged in multiple acts of misconduct and insubordination despite numerous warnings. Rec. Doc. 85-2 at 16. The Port argues that Brown's misconduct and insubordination sever the causation prong of his *prima facie* case and also serve as legitimate, non-retaliatory reasons for his termination if that step becomes necessary. Rec. Doc. 85-2 at 16. The Port maintains that Brown cannot rely on temporal proximity or otherwise show but-for causation. Rec. Doc. 85-2 at 16.

This Court agrees with the Port's assertion that the facts of *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086 (5th Cir. 1995) are instructive in the present case. Rec. Doc. 85-2 at 16-17. The plaintiff in *Mayberry* filed his first EEOC charge in the mid-1980s and continued to file charges and complaints regularly through 1992. *Mayberry*, 55 F.3d at 1092; Rec. Doc. 85-2 at 16. He was suspended in December 1992 for negligence on the job in violation of a workplace rule. *Mayberry*, 55 F.3d at 1089; Rec. Doc. 85-2 at 16-17. The Fifth Circuit rejected the plaintiff's argument that his suspension was retaliatory. *Mayberry*, 55 F.3d at 1089; Rec. Doc. 85-2 at 17. The court in *Mayberry* held that a suspension that occurs several years after protected activity begins is not "inherently suspicious." *Mayberry*, 55 F.3d at 1092; Rec. Doc. 85-2 at 17. The court found that there was "insufficient evidence to support a finding that 'but for' Mayberry's protected activity, he would not have received the 13-day suspension." *Mayberry*, 55 F.3d at 1092.

Like the plaintiff in *Mayberry,* Brown's termination did not occur until a number of years after his protected activity began and was in response to acts of insubordination and misconduct. Rec. Doc. 85-2 at 17. As the Port points out in its reply memorandum, Brown was suspended for

8

and warned about the consequences of insubordination in connection with the open door over four months before this lawsuit was filed, which indicates that Brown's argument that the lawsuit was the reason for his termination lacks merit. Rec. Doc. 85-3 at 174-77; Rec. Doc. 95 at 5. Given the holding in *Mayberry*, the timing in this case does not raise suspicion. Brown was terminated over a year after the last time he filed a discrimination complaint, which is an indication that the temporal proximity is not close enough to support an inference of causation. *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273, 121 S. Ct. 1508, 1511, 149 L.Ed.2d 509 (2001); Rec. Doc. 85-2 at 18; Rec. Doc. 91 at 20. In addition, he was terminated nine months after filing this lawsuit. It is "unreasonable to presume" that Brown was "suddenly" terminated in 2011 for making the same complaints he had been making since 2006. *See Dronet v. LaFarge Co.,* No. 00-2656, 2001 WL 699384, at *4 (E.D. La. June 20, 2001); Rec. Doc. 95 at 4.

Additionally, as the Port states, district courts in the Fifth Circuit have held that intervening events can weaken or sever any purported causal link where such events provide a legitimate basis for the employer's action. *See Moore v. Delta Airlines, Inc.*, No. 10-2241, 2012 WL 685414, at *10 (N.D. Tex. March 1, 2012); *see also Jones v. Superior Protection Servs., Inc.*, No. 7-13554, 2009 WL 347748, at *11 (S.D. Tex. Feb. 9, 2009) (finding negative assessment of plaintiff's performance by "neutral arbiter" severed causal link); Rec. Doc. 85-2 at 18. This Court agrees with the Port's contention that any causal link that was alleged to exist would have been severed by Brown's repeated insubordination regarding the open door and his refusal to comply with the new payroll procedures.[2] Rec. Doc. 85-2 at 18.

---

[2] Brown also argues that it is not insubordination when a plaintiff resists a command designed to prevent him from doing his job, and he identifies the order to close the door as such a command. Rec. Doc. 91 at 25. However, he provides no evidence to show that the door being closed actually prevented him in any way from doing his job – the record only suggests that a sign had to be put up

9

This Court finds that Brown does not provide sufficient evidence to show that the Port decided to terminate him based on a desire to retaliate against him for his complaints and that he does not establish a *prima facie* case of retaliation.[3] *Nassar*, 133 S. Ct. At 2528.  Therefore, taken as a whole, the evidence is not enough to convince a reasonable jury that Brown was the victim of unlawful retaliation.  The Motion for Summary Judgment as to Brown's Title VII retaliation claim should be GRANTED.

### III. CONCLUSION

Accordingly,

IT IS ORDERED that the Motion for Summary Judgment filed by defendant Board of Directors, Port of New Orleans is GRANTED.  Rec. Doc. 85.

New Orleans, Louisiana, this 27th day of August, 2013.

_____
**HELEN G. BERRIGAN**
**UNITED STATES DISTRICT JUDGE**

---

to direct those looking for Mr. Brown's office.  Rec. Doc. 91 at 18; Rec. Doc. 91-12 at 6. Additionally, Brown's request to the Orleans Civil District Court to enjoin the Port from enforcing the door order was denied.  Rec. Doc. 85-3 at 48-51.

[3] Even assuming Brown proved a but-for causal connection between his complaints and his ultimate termination and established a *prima facie* case, the Port makes it clear that Brown's insubordination was the reason for his termination.  Rec. Doc. 85-3 at 205-06.  As stated previously, Brown argues that this litigation was the real reason for his termination.  Rec. Doc. 91 at 29-30.  However, he ultimately offers no convincing evidence that the Port's given reason is pretextual and the record indicates that he received warnings prior to commencing this litigation that his continued insubordination regarding the open door would result in termination.  Rec. Doc. 85-3 at 174-77; Rec. Doc. 95 at 5